**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

JOHN E. SHAVE, :

Plaintiff,

Case No. 3:07-cv-202

-vs-

REYNOLDS & REYNOLDS COMPANY, *et al.*,

Chief Magistrate Judge Michael R. Merz

Defendant. :

---

**DECISION AND ENTRY**

---

This case is before the Court on the parties' cross- Motions for Summary Judgment. (Doc. 13, 14). The parties have fully briefed the issues, (Doc. 13, 14, 15, 16, 17), and the matter is ripe for decision on the merits.

The parties have consented to full magistrate judge jurisdiction and the matter has been referred on that basis. (Doc. 7).

Plaintiff John E. Shave filed this action against Reynolds & Reynolds Company ("Reynolds") and Universal Computer Systems Holding, Inc. ("UCS") in the Common Pleas Court of Montgomery County Ohio, seeking to recover benefits pursuant to certain qualified retirement plans. *Shave v. The Reynolds & Reynolds Company, et al.*, No. 07-3547 (filed Apr. 30, 2007)(Doc. 3, Ex. A thereto). Reynolds removed the case to this Court on the basis of federal question jurisdiction under the Employee Retirement Income Security Act, 29 U.S.C. § 1332(a)(1)(B)

(“ERISA”). (Doc. 2). Subsequently, Mr. Shave filed his current Motion and Reynolds filed its Motion both of which are currently before the Court. The Court’s subject matter jurisdiction is not disputed.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a Rule 50 motion for judgment as a matter of law. *See, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria,

summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With these principles in mind, the facts in this case, which generally are not in dispute are as follows.

Mr. Shave began working for Reynolds in May, 2001, and served as an officer holding the position of Vice President of Investor Relations. As an officer of Reynolds, Mr. Shave was eligible to participate in the Retirement Plan ("Plan"). Mr. Shave's employment with Reynolds ended on August 31, 2006, pursuant to the terms of a written transition and termination agreement

between him and Reynolds. Under the terms of the agreement, the parties mutually agreed that effective August 31, 2006, Mr. Shave's employment with Reynolds ceased and that his eligibility, vesting, and benefit accrual service under the Plan, the 401(k) savings plan, and any non-qualified plans which Reynolds maintained ceased.

Reynolds first established the Plan in October, 1978. Reynolds also had in effect an Officers Salary Continuation Plan under which Reynolds' officers, including Mr. Shave, were eligible to receive additional benefits. The two plans were combined into one effective October 1, 2002, and the combined plans replaced the Officers Plan. There is no dispute that Mr. Shave was a participant in the Plan.

The parties agree that Section 9 of the Plan reads in relevant part:

> ... [I]f within twenty-four (24) months following a Change in Control of Reynolds a Participant's employment is terminated by Reynolds (other than a "Termination for Cause" (as defined above)), or a Participant terminates his employment for Good Reason, and Participant has attained at least one year of service as an eligible officer of Reynolds (as determined by the CHRO [Reynolds' Chief Human Resources Officer]) as of that date of such Change in Control, the Participant shall be entitled to a lump sum payment equal to the present value of the benefit he would have received pursuant to Section 2 of the Plan as if the requirements of the Participant's Payment Date has been satisfied ... .

See, *e.g.,* Doc. 3, Attachment 1 thereto.

The Plan also provides that a "Change in Control" means, *inter alia,* "the consummation of a merger or consolidation of Reynolds or any direct or indirect subsidiary of Reynolds with any other corporation...". *Id.* Further, the Plan defines "Good Reason" as, *inter alia,* when "the Participant is required by Reynolds to perform duties or services which differ significantly from those performed by him prior to the Change in Control, or which are not

ordinarily and generally performed by a similarly situated executive of a corporation". *Id.* Finally, the Plan provides that, "[i]n order to be eligible for payments under this Plan, the Participant must satisfy all applicable Service Requirements or qualify for payment under Section 9. *Id.*

In May, 2006, Safeguard approached Mr. Shave to discuss possible employment. By the end of July, 2006, Mr. Shave had finalized an agreement with Safeguard under which he would become Safeguard's Vice-President of Investor Relationships and Corporate Communications.

On August 7, 2006, UCS agreed, subject to shareholder approval, to purchase all of Reynolds' outstanding public stock. The next day, Reynolds and UCS publicly announced that they had executed a merger and/or asset sale agreement. That August 8, 2003, press release read in part: "[Reynolds and UCS] today announced a definitive agreement to merge their two organizations", "[t]he transaction is subject to approval by Reynolds shareholders and regulatory clearances" and "Reynolds expects to schedule a special meeting of its shareholders during the fourth calendar quarter of 2006 to vote on the transaction". Finally, the release referred to the "proposed transaction".

On August 8, 2006, UCS sent a letter to its clients advising them, *inter alia*, that, "... UCS and Reynolds ... announced a merger agreement" and that "the official press release appears on the UCS website." On August 11, 2006, Reynolds sent its customers a letter which stated in part, "[t]oday Reynolds and Reynolds announced that we will merge with Universal Computer Systems ... to create the world's pre-eminent dealer services provider" and "[t]he transaction, of course, requires regulatory clearance and approval from shareholders which we expect before the end of the calendar year."

Mr. Shave left his employment with Reynolds on August 31, 2006. On October 23, 2006, Reynolds shareholders held a meeting at which they approved the merger with UCS. In or about January, 2007, Mr. Shave made an inquiry about his benefits under the Plan. Reynolds advised Mr. Shave verbally that he was not eligible for benefits under the Plan. By letters dated March 29, and April 11, 2007, Mr. Shave, through counsel, requested a lump sum payment under the Plan. Neither Reynolds, or UCS responded to either of Mr. Shave's demands. This action followed.

The parties agree that this an ERISA matter. ERISA comprehensively regulates employee benefit plans. 29 U.S.C. §§ 1002, 1003. It regulates benefit plans to ensure the uniformity of decision which will assist plan administrators, fiduciaries, and participants to predict the legality of proposed actions without the necessity of reference to varying state laws. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 56 (1987). In cases in which an ERISA Plan administrator is given no discretionary authority by the Plan, review of the administrator's decision by a district court is *de novo* as to both the Plan administrator's interpretation of the Plan and the administrator's factual findings. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). When the Plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, a deferential arbitrary and capricious standard of review applies. *Wilkins v. Baptist Healthcare System, Inc.* 150 F.3d 609, 616 n.4 (6th Cir. 1998).

Section 503 of ERISA imposes on an employee benefit plan an obligation to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for

> benefits has been denied a full and fair review by the appropriate named fiduciary of the decision for denying the claim.

29 U.S.C. § 1133.

First, the Court notes that the parties engaged in discovery and have submitted to the Court matters outside the administrative record.

In an ERISA claim for benefits action, the district court's review is generally "based solely upon the administrative record." *Wilkins v. Baptist Healthcare Systems., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Evidence outside the administrative record may be considered "if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* This also means that any prehearing discovery should be limited to such procedural challenges." *Id.* However, a claimant cannot obtain discovery beyond the administrative record—even if limited to a procedural challenge—merely by alleging a procedural violation. See *Likas v. Life Ins. Co. of N. America*, No. 06-5124, 2007 WL 738647, 222 Fed. App'x 481, 486 (6th Cir. Mar. 12, 2007).

Although the parties engaged in discovery, it is not entirely clear as to what evidence outside the administrative record, if any of it, the parties want the Court to consider. For example, while Mr. Shave frequently refers to evidence obtained during discovery, he focuses a significant portion of his argument on solely procedural matters. Nevertheless, it is clear now that there are no allegations of a due process violation or of a conflict of interest or bias on the part of the administrator which would justify this Court relying on evidence outside the record.

There is Sixth Circuit authority for the proposition that when a claimant had benefits and lost them and there is a procedural violation involved in the process, a retroactive award of ERISA benefits may be proper. *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613 (6th Cir. 2006).

However, the Sixth Circuit has consistently held that procedural violations of ERISA do not give rise to claims for substantive damages. *Sears v. Union Central Life Ins. Co.,*, No. 06-3616, 2007 WL 725738 at *4 (6th Cir. Mar. 8, 2007), citing *Lewandowshi v. Occidential Chem. Corp.*, 986 F.2d 1006, 1008, (6th Cir. 1993) and *Anderson v. Grissom's Salads, Inc.*, No. 99-5270, 2000 WL 875365 at *3-4 (6th Cir. June 19, 2000). Generally, an administrator's failure to comply with ERISA procedural requirements can result in a remand by the reviewing court to the administrator. *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006), citing *VanderKlok v. Provident Life and Acc. Ins. Co.*, 956 F.2d 610, 619 (6th Cir. 1992). The Sixth Circuit has also held that administrators need only "substantially comply" with ERISA's procedural notice requirements in order to avoid remand. *Moore*, 458 F.3d at 436 (citation omitted). In determining whether there is substantial compliance, the Sixth Circuit requires consideration of "all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Moore,* 458 F.3d at 436; *see also, Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003). When claim communications as a whole are sufficient to fulfill the purposes of Section 1133, the claim decision will be upheld even if a particular communication does not meet those requirements. *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996); *see also, Moore,* 458 F.3d at 436. In this analysis, the court asks whether the plan administrators fulfilled the essential purpose of § 503 of ERISA–notifying the claimant of the reasons for denying his claim and affording him a fair opportunity for review. *Id., citing Kent, supra.*

As noted above, although Mr. Shave made two written demands for benefits under the Plan, neither Reynolds nor UCS responded to Mr. Shave's claims. In other words, Defendants

failed to comply, substantially or otherwise, with ERISA's § 503 "adequate notice in writing" requirement. As a result, there is not an administrator's decision setting forth the specific reasons for the denial of Mr. Shave's demands for benefits under the Plan.

Mr. Shave seems to argue that because Reynolds violated the procedural/notice requirements of ERISA the appropriate remedy is to grant to him the benefits under the Plan to which he claims he is entitled. That, of course, is not the law in the Sixth Circuit. Even assuming that *Elliott, supra*, stands for the proposition that an award of ERISA benefits may be proper in certain situations, this is not one of those situations. Specifically, Mr. Shave was not receiving some kind of ERISA benefits which he subsequently lost.

At this juncture, the Court notes that the parties seem to agree between themselves that because the administrator failed to give an explanation for the denial of Mr. Shave's claim, in violation of the procedural requirements of ERISA, this Court should employ the *de novo* standard of review.

First, as a federal district court, this Court must follow and apply the law as determined by the Sixth Circuit, not the law the parties agree is applicable. See *Grand ex rel. U.S. v. Northrop Corp*., 811 F.Supp. 333, 335 n.3 (S.D.Ohio1992). This Court does not view the current law in the Sixth Circuit as **allowing** the Court to engage in *de novo* review of this matter. Rather, in view of the Sixth Circuit's recent opinion in *Moore*, 458 F.3d at 436, this Court finds that the better course is for this matter to be remanded to the administrator.

For the foregoing reasons, the Motions for Summary Judgment, (Doc. 13, 14), are denied. This matter is remanded to the administrator for additional proceedings. The parties are ordered to file a Joint Status Report not later than October 8, 2008.

July 15, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

J:\Shave_MSJ.wpd